IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02704-MEH

JAMES GILLIS, and
CHRISTIE GILLIS, individually and on behalf of their minor children, AG, AW, JG, and WD,

    Plaintiffs,

v.

PATRICIA PHILLIPS,
MELISSA GOSSETT,
ANDY LORENSEN,
CASSANDRA VERNIE, and
KIM BRITTON,

    Defendants.

## ORDER ON DEFENDANT VERNIE'S MOTION TO DISMISS

**Michael E. Hegarty, United States Magistrate Judge**.

In response to the Plaintiffs' Amended Complaint, Defendant Cassandra Vernie has moved to dismiss the Plaintiffs' Fourth Amendment claims against her. In this Circuit, parents proceeding *pro se* may not bring claims on behalf of their minor children; therefore, I must grant the motion to dismiss all claims brought on behalf of AG, AW, JG, and WD against Defendant Vernie. In addition, for the Plaintiffs' lack of standing for their Fourth Amendment claims and failure state Fourteenth Amendment claims against Defendant Vernie, I will grant the motion to dismiss the Plaintiffs' individual claims.[1]

## BACKGROUND

Plaintiffs initiated this lawsuit on November 2, 2016, then filed the operative Second

---

[1] The parties consented to this Court's jurisdiction on April 18, 2017. ECF No. 40.

Amended Complaint on April 9, 2017 as a matter of course.[2]

## I. Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiffs in the Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On April 20, 2016, the Lincoln County Department of Human Services ("DHS") received an anonymous "referral" concerning the Plaintiffs' family. Certain DHS staff ("Red Team") conducted a meeting the following day on April 21, 2016. After the Red Team gathered all information concerning the referral, it assigned a "High Risk" level to the referral, which was partly based on information procured from previous DHS involvement with the Plaintiffs' family. The reason given for the referral and need for the "High Risk" level was that the victim, AW, was restrained and punched by the alleged perpetrator, AW's step dad, Plaintiff James C. Gillis. Only one victim and only one allegation were noted.

On April 21–22, 2016, Defendant Case Worker Melissa Gossett, without parental consent or a current court order, interviewed four of the Plaintiffs' children in schools they were attending. The Limon Public School secretary, Defendant Cassandra Vernie ("Vernie"), facilitated interviews with three of the children, AW, AG, and JW, with no policy in place governing such interviews. Limon Child Development Center staff member, Defendant Kim Britton, facilitated the interview with the fourth child with no policy in place governing such interview. Much of the information gathered from the interviews had nothing to do with the allegation or referral and has been

---

[2]Plaintiffs filed duplicate copies of the Second Amended Complaint at ECF Nos. 38, 39.

documented for future use.

On April 21, 2016, Vernie was asked to escort AW, AG, and JW from their assigned classrooms. Vernie instructed each child to leave the assigned classroom, follow her, and enter another room where Defendant Gossett was present. Vernie did not inform the children where they were going or why, or that they had a right not to participate. Vernie acted on her own with no law and no Limon Public School policy or procedure in place to govern a visit from the Department of Human Services. Vernie did not have authority to allow another governmental agency to remove the children from the classrooms for interviews.

## II.     Procedural History

Based on these factual allegations, Plaintiffs claim Vernie violated their Fourth Amendment rights to be free from illegal seizures. Am. Compl., ECF No. 39 at 8. Plaintiffs request "the maximum monetary amount allowed by law . . . in punitive damages," as well as an order requiring that Limon Public Schools "create policy to protect the Constitutional rights of the parents and the children in the school setting." *Id.* at 10.

Vernie filed the present motion arguing the Plaintiffs fail to state plausible claims for violations of *their own* constitutional rights under the Fourth Amendment, the Plaintiffs may not represent their children in this litigation, and the allegations taken as true do not demonstrate Vernie violated the Fourth Amendment. In addition, Vernie claims she is entitled to qualified immunity in her individual capacity.

Plaintiffs counter[3] that their parental rights were violated when their children were

---

[3]Plaintiffs filed duplicate copies of their response briefs at ECF Nos. 48, 50. These briefs refer in the title and the introductory sentence to the motion to dismiss filed by Defendants Gossett, Lorensen, and Phillips. *Id.* However, the content of the briefs reflects the Plaintiffs' response to

interviewed without notice or consent; they "should be allowed" to represent their children where no attorney has expressed interest in taking the case; and, Vernie acted unreasonably and failed to fulfill her duty to protect the children's Fourth Amendment rights when she "seized" the children to bring them to the interviews. Finally, Plaintiffs contend that, by failing to file a motion to dismiss the original complaint, Vernie cannot now claim immunity based on the Second Amended Complaint.

Vernie replies that Plaintiffs fail to cite any authority contradicting the argument that they cannot bring claims based on their children's constitutional rights; Tenth Circuit precedent holds that parents may not represent their minor children in federal litigation; the focus of the "seizure" inquiry under the Fourth Amendment is on the limitation of a student's movement, not on the reason for the limitation; and, the Plaintiffs' cited authority was vacated by the Supreme Court, rejected by the Sixth Circuit, and never adopted by the Tenth Circuit.

## **LEGAL STANDARDS**

### I. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely

---

Defendant Vernie's motion to dismiss. *Id.*

conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

The adequacy of pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

5

## II.     Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## **ANALYSIS**

Here, Vernie challenges the Plaintiffs' theory that the Plaintiffs can (or "should be able to") represent their children in this litigation; that the allegations demonstrate the Plaintiffs, individually, have been injured; and that the allegations demonstrate a plausibility Vernie violated the Fourth Amendment. The Court will address each of these challenges in turn.

## I.     May the Plaintiffs Represent Their Children in this Action?

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Ill*. 439 U.S. 128, 133–34 (1978). "Undoubtedly, parents may assert their children's Fourth Amendment rights *on behalf of* their children."

6

*Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997) (emphasis in original). To do so, the children must be named as plaintiffs. *Id.* (parent failed to demonstrate violation of children's Fourth Amendment rights because they were not named in the complaint). Here, the Plaintiffs properly name their children as Plaintiffs in this action.

However, a pro se parent cannot represent his or her children in federal court for constitutional claims. *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986). "In this circuit, we have held 'that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.'" *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1300 (10th Cir. 2011) (quoting *Meeker*, 782 F.2d at 154).[4] The purpose of this rule is to "protect the interests of the minor party; in addition, it jealously guards the judiciary's authority to govern those who practice in courtrooms." *Id.* (quoting *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010)). Plaintiffs here are proceeding *pro se* and, thus, cannot bring claims on behalf of their children. Their argument that they "should be able to" bring such claims is not supported by any legal authority.

Accordingly, the Court will grant Vernie's motion to dismiss the children's Fourth Amendment claims against her.

## II. Do the Allegations Support Plaintiffs' Individual Fourth Amendment Claims?

Plaintiffs contend they bring claims not only on behalf of their children, but on behalf of themselves. The Fourth Amendment guarantees: "The right of the people to be secure in their

---

[4] In *Adams*, the court found that a non-attorney parent could proceed *pro se* in federal court on behalf of her minor child to challenge the denial of social security benefits, because "the reasons for the general rule do not apply to [ ] appeals [from administrative denials]." 659 F.3d at 1300. *Adams*' exception to the general rule does not apply to this case.

7

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Minn. v. Carter*, 525 U.S. 83, 88 (1998). The Amendment protects persons against unreasonable searches of "their persons [and] houses" and thus indicates that the Fourth Amendment is a personal right that must be invoked by an individual. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places")).

While a Fourth Amendment right typically must be invoked by the individual possessing it, the Tenth Circuit noted that there may be circumstances in which a parent has standing to bring a Fourth Amendment claim for the seizure of a minor child, but the parent must "allege [his or] her own distinct injuries" as a result of the seizure. *J.B. v. Washington Cnty.*, 127 F.3d 919, 928 (10th Cir. 1997). The Ninth Circuit mentioned this note, but determined that a child's removal from parental custody invoked his or her Fourth Amendment rights against seizure and, separately, the parents' Fourteenth Amendment rights against interference with the right to familial association. *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000); *see also J.B.*, 127 F.3d at 928 ("it is clear that constitutional protection afforded a parent against a child's seizure [from her home to be interviewed for possible child abuse] may be found in the Fourteenth Amendment").

Although the Plaintiffs raise both Fourth and Fourteenth Amendment claims against other Defendants in this case, they specifically assert their claims against Vernie under the Fourth Amendment. Am. Compl. 8. However, in light of the Plaintiffs' *pro se* status in this case, the Court will construe their claims in accordance with the factual allegations and their corresponding arguments. *Hall*, 935 F.2d at 1110.

Plaintiffs allege that Vernie "was asked on April 21, 2016 to seize/escort our children AW, AG, and JW from their assigned Classrooms . . ., follow her[,] and to enter another room where DHS Case Worker Melissa Gossett was present." Am. Compl. 8. Plaintiffs argue that their individual rights were violated when "the Limon Public School failed to inform [them] that [the school] would allow the Department of Human Services to seize their children to interview them" and the Eighteenth Judicial District "court order that [was] issued approximately 6 years prior to the referral date cannot be issued upon probable cause, cannot be supported by oath or affirmation, and did not describe the person to be seized." Resp. 6–7.

The Court finds these allegations, construed liberally and taken as true, do not implicate the Plaintiffs' Fourteenth Amendment rights against interference with familial association. Unlike those cases involving alleged violations of Fourteenth Amendment rights, Vernie was not alleged to have separated the Plaintiffs' children from their parents or removed them from their home. *See J.B.*, 127 F.3d at 927 ("plaintiffs have a substantial interest in the right to associate with their family."); *Wallis*, 202 F.3d at 1136 ("Parents and children have a well-elaborated constitutional right to live together without governmental interference."). Therefore, the Court will not infer any claims by the Plaintiffs brought against Vernie under the Fourteenth Amendment.

Supporting their individual claims under the Fourth Amendment, the Plaintiffs allege that, as a result of Vernie's "seizure" of the children for interviews, they, as parents, were "stigmatized" and the seizure caused them "to question authority." Am. Compl. 8. However, they request no recovery for any emotional or mental harms, but seek only "punitive damages from the Limon Public Schools." *Id.* at 10. Moreover, the Plaintiffs proffer no argument in response to the motion to dismiss concerning their alleged injuries resulting from the seizure.

9

Under these circumstances, I find the Plaintiffs have failed to allege an "injury in fact" necessary to confer standing for their Fourth Amendment claims against Vernie. *See J.B.*, 127 F.3d at 928. "To satisfy Article III standing requirements, a plaintiff must show that he or she suffered an 'injury in fact,' that is, an injury that is both concrete and particularized and actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Even taking them as true, allegations that Vernie's purported seizure of the children—to escort them from their classrooms to another room where Defendant Gossett awaited an interview with them—placed a "stigmatism"[5] on the family and "caused the children and parents to question authority" are merely bare assertions, do not describe injuries that are either concrete or particular, and fail to meet the requirements of Fed. R. Civ. P. 8.

Without standing to bring their Fourth Amendment claims against Vernie, the Plaintiffs have failed to demonstrate this Court's jurisdiction over such claims. *See Morris v. Khadr*, 415 F. Supp. 2d 1323, 1329 (D. Utah 2006) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)) ("Because standing is a constitutional component of a federal court's subject matter jurisdiction, federal courts must ascertain in each case whether the parties have standing to present their claims."). Accordingly, the Court will grant Vernie's motion to dismiss the Plaintiffs' Fourth Amendment claims against her for the Court's lack of subject-matter jurisdiction.[6]

---

[5]The Court assumes the Plaintiffs intended to use the term, "stigma," which is defined as "a mark of shame or discredit." https://www.merriam-webster.com/dictionary/stigma (last visited May 31, 2017).

[6]"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).

The Court's analysis in this regard presents a "facial" attack on the complaint's allegations

In light of this order, the Court will not proceed to analyze whether Vernie's conduct constituted a "seizure" under the Fourth Amendment pursuant to Fed. R. Civ. P. 12(b)(6).

**CONCLUSION**

The Court concludes the Plaintiffs may not bring claims on behalf of their children without legal representation, their allegations against Vernie do not state Fourteenth Amendment claims, and they lack standing to bring individual Fourth Amendment claims against Vernie. Therefore, Defendant Cassandra Vernie's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [filed April 24, 2017; ECF No. 42] is **granted**. The Clerk of the Court is directed to remove Defendant Vernie from the caption of this case.

Dated at Denver, Colorado, this 5th day of June, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

as to the Court's subject matter jurisdiction, which questions the sufficiency of the complaint. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing a facial attack on the complaint, I must accept the allegations in the complaint as true. *Id.*