IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02704-MEH

JAMES GILLIS, and
CHRISTIE GILLIS, individually and on behalf of their minor children, AG, AW, JG, and WD,

    Plaintiffs,

v.

PATRICIA PHILLIPS,
MELISSA GOSSETT,
ANDY LORENSEN, and
KIM BRITTON,

    Defendants.

---

# ORDER ON MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge**.

In response to the Plaintiffs' Amended Complaint, Defendants Melissa Gossett, Andy Lorensen, and Patricia Phillips (collectively, the "DHS Defendants") moved to dismiss the Plaintiffs' Fourth and Fourteenth Amendment claims against them. In this Circuit, parents proceeding *pro se* may not bring claims on behalf of their minor children; therefore, I must grant the motion to dismiss all claims brought on behalf of AG, AW, JG, and WD against the DHS Defendants. In addition, due to the Plaintiffs' lack of standing for their Fourth Amendment claims and their failure to state Fourteenth Amendment substantive and procedural due process claims, I find the DHS Defendants are entitled to qualified immunity and will grant the motion to dismiss the Plaintiffs' individual claims against them.

## BACKGROUND

Plaintiffs initiated this lawsuit on November 2, 2016, then filed the operative Second

Amended Complaint on April 9, 2017 as a matter of course.[1]

I.      **Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs in the Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On April 20, 2016, the Lincoln County Department of Human Services ("DHS") received an anonymous "referral" concerning the Plaintiffs' family. Certain DHS staff ("Red Team") conducted a meeting the following day on April 21, 2016. After the Red Team gathered all information concerning the referral, it assigned a "High Risk" level to the referral, which was partly based on information procured from previous DHS involvement with the Plaintiffs' family. The reason given for the referral and need for the "High Risk" level was that the victim, AW, was restrained and punched by the alleged perpetrator, AW's stepfather, Plaintiff James C. Gillis. Only one victim and only one allegation were noted.

On April 21–22, 2016, Defendant Case Worker Melissa Gossett, without parental consent, interviewed four of the Plaintiffs' children in schools or other facilities they attended. She asked that the children be brought from their classrooms into a separate room for the interviews. Plaintiffs believe much of the information gathered from the interviews had nothing to do with the allegation or referral and has been documented for future use.

At a May 3, 2016 meeting, Defendant Supervisor Andy Lorensen provided Plaintiffs with an April 12, 2010 order issued by Chief Judge William Blair Sylvester of the Eighteenth Judicial

---

[1]Plaintiffs filed duplicate copies of the Second Amended Complaint at ECF Nos. 38, 39.

District relating to child abuse investigations and allowing children to be interviewed "without a court order or parental consent." Am. Compl. ¶ 2, p.3; ¶ 1, p. 6. Lorensen used the order to justify Gossett's interviews of the Plaintiffs' children. Plaintiffs believe Lorensen lied to Plaintiffs stating there was a "government need" for a family meeting because of a concern from "two incidents" that occurred during the department's investigation; however, neither incident related to the referral or allegation.

Gossett interviewed one of the Plaintiffs' children, WD, a second time on June 7, 2016 after the Plaintiffs told her they did not want their children interviewed without their consent or a court order. Gossett gained access to WD at home through a babysitter who was watching WD at the time. Plaintiffs did not give their consent for such interview. Plaintiffs believe Gossett entered all information she gained from the interviews into the Lincoln County "TRAILS" system for use in the future.

In response to the Plaintiffs' grievance, Defendant Director Patricia Phillips and Lorensen met with the Plaintiffs, and Phillips told Plaintiffs that Lincoln County policy did not require either parental consent or a court order to proceed with interviews of the Plaintiffs' children. Phillips also determined that the Plaintiffs would not be entitled to review by a "citizen panel," which Plaintiffs believe is typically provided as part of the grievance process.

Plaintiffs assert the Defendants' actions have caused the Plaintiffs and their children embarrassment and emotional distress; in addition, the children no longer trust government officials.

## II.     Procedural History

Based on these factual allegations, the Plaintiffs claim the DHS Defendants violated their Fourth Amendment right to be free from illegal seizures and their Fourteenth Amendment right to

due process. Am. Compl., ECF No. 39 at 3–7. Plaintiffs request the following relief: (1) "the maximum monetary amount allowed by law . . . in punitive damages," (2) an order requiring that the DHS "create policy to protect the Constitutional rights of the parents and the children in the school setting," (3) an order requiring the DHS to obtain a court order based upon probable cause prior to interviewing a child, (4) an order requiring the removal of all data in the DHS systems that is not supported by fact, (5) an order requiring the removal of all information from this case in possession of the DHS, (6) an order requiring the DHS to adopt a policy for validating information prior to being entered into the "Trails system," and (7) the DHS Defendants be "dismissed" from their employment with DHS. *Id.* at 10.

The DHS Defendants filed the present motion arguing the Plaintiffs fail to state plausible claims for violations of *their own* constitutional rights under the Fourth Amendment; Plaintiffs may not represent their children in this litigation; the allegations taken as true do not demonstrate the DHS Defendants violated the Fourth Amendment; Plaintiffs' Fourteenth Amendment rights were not violated; and the Plaintiffs fail to allege personal participation by Lorensen and Phillips as required under 42 U.S.C. § 1983. In addition, the DHS Defendants claim they are entitled to qualified immunity in their individual capacities.

Plaintiffs' response contains several pages of "factual" argument and attached supporting documentation, apparently in the Plaintiffs' effort to *prove* their claims. However, at this stage of the litigation and in accordance with the motion filed, the Plaintiffs need only demonstrate that their allegations in the Second Amended Complaint state plausible claims for relief. Therefore, the Court has determined that it need not consider such factual arguments or evidence for its analysis. Rather, construing the Plaintiffs' pleading and brief liberally, the Court recognizes the following arguments from the Plaintiffs in response to the motion: they contend that their parental

4

rights were violated when their children were interviewed without notice or consent; they "should be allowed" to represent their children when no attorney has expressed interest in taking the case; the DHS Defendants acted unreasonably by conducting interviews without parental consent or a current court order, and they failed to fulfill their duties to protect the children's Fourth Amendment rights when Defendant Gossett "seized" the children to bring them to the interviews; and the DHS Defendants infringed on their Fourteenth Amendment rights to due process in that the Plaintiffs' "fundamental liberty interest in the care, custody, and management of their children was carelessly and recklessly violated" by the "many inconsistencies in the investigation starting from the credibility of the referral to the collection of invalidated information that is reported as being true."  Resp. 22.

The DHS Defendants reply that Plaintiffs fail to cite any authority contradicting the argument that they cannot bring claims based on their children's constitutional rights; Plaintiffs have no standing to bring Fourth Amendment claims against them; Tenth Circuit precedent holds that case workers interviewing children at school does not constitute a seizure; the Plaintiffs' cited authority was vacated by the Supreme Court, rejected by the Sixth Circuit, and never adopted by the Tenth Circuit; parents may not represent their minor children in federal litigation; Plaintiffs never identify how "brief interviews in the course of a school day so deprived them of the right to the care or management of their children as to rise to the level of a [Fourteenth Amendment] violation"; and Plaintiffs fail to state Fourth Amendment violations because they "do not assert that they were personally subjected to any unreasonable search or seizure as a result of the investigation or its outcome."  Reply 5.

## LEGAL STANDARDS

I.      **Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while "the 12(b)(6) standard does not require that [a] [p]laintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [the] [p]laintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192.

The adequacy of pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## II. Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. N.M.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th

7

Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## **ANALYSIS**

Defendants assert they are entitled to qualified immunity from liability for the Fourth and Fourteenth Amendment claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806–08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127–28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular

case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). Here, for Plaintiffs' constitutional claims against Defendants, the Court examines first whether Plaintiffs have demonstrated on the alleged facts that Defendants violated their constitutional rights to due process and to be free from unreasonable search and seizure. If the Court finds that Plaintiffs' facts state plausible violations of a right, the Court will then proceed to analyze whether the Plaintiffs' constitutional right was clearly established at the time of the alleged conduct.

Here, the DHS Defendants challenge the Plaintiffs' theory that the Plaintiffs can (or "should be able to") represent their children in this litigation; argue that the allegations demonstrate no personal participation by Lorensen and Phillips; contend that Plaintiffs have no standing to bring Fourth Amendment claims against them; and assert that the allegations do not support Fourth or Fourteenth Amendment violations against the Plaintiffs themselves. The Court will address each of these challenges in turn and, when appropriate, determine whether Plaintiffs state plausible violations of their rights before determining whether those rights were clearly established.

**I.      May the Plaintiffs Represent Their Children in this Action?**

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Ill*. 439 U.S. 128, 133–34 (1978). "Undoubtedly, parents may assert their children's Fourth Amendment rights *on behalf of* their children." *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997) (emphasis in original). To do so, the children must be named as plaintiffs. *Id.* (finding the parent failed to demonstrate violation of children's Fourth Amendment rights because children were not named in the complaint). Here, the Plaintiffs properly name their children as Plaintiffs in this action.

However, a *pro se* parent cannot represent his or her children in federal court for

constitutional claims. *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986). "In this circuit, we have held 'that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.'" *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1300 (10th Cir. 2011) (quoting *Meeker*, 782 F.2d at 154).[2] The purpose of this rule is to "protect the interests of the minor party; in addition, it jealously guards the judiciary's authority to govern those who practice in courtrooms." *Id.* (quoting *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010)). Plaintiffs here are proceeding *pro se* and, thus, cannot bring claims on behalf of their children. Their argument that they "should be able to" bring such claims is not supported by any legal authority.

Accordingly, the Court will grant the DHS Defendant's motion to dismiss the children's claims against them.

## II. Do the Allegations Demonstrate Lorensen's and Phillips' Personal Participation?

Plaintiffs make clear in the Amended Complaint and their response brief that Lorensen had supervisory authority over Gossett, and Phillips had supervisory authority over Lorensen. Plaintiffs allege that Lorensen used a 2010 court order to justify Gossett's interviews of the Plaintiffs' children, and he lied to Plaintiffs stating there was a "government need" for a family meeting because of a concern from "two incidents" that occurred during the department's investigation; however, neither incident related to the referral or allegation. They also allege Phillips told Plaintiffs that Lincoln County policy did not require either parental consent or a court order to proceed with interviews of the Plaintiffs' children, and she determined that the Plaintiffs

---

[2]In *Adams*, the court found that a non-attorney parent could proceed *pro se* in federal court on behalf of her minor child to challenge the denial of social security benefits, because "the reasons for the general rule do not apply to [ ] appeals [from administrative denials]." 659 F.3d at 1300. *Adams*' exception to the general rule does not apply to this case.

would not be entitled to review by a "citizen panel," which is typically provided as part of the grievance process.

Personal participation is an essential element in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Ky. v. Graham*, 473 U.S. 159, 166 (1985). A supervisor can only be held liable for his or her own deliberate intentional acts. *See Iqbal*, 556 U.S. at 676; *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.").

Defendants argue that, because neither Lorensen nor Phillips participated in the children's interviews, they did not personally participate in the alleged constitutional violations. The Court disagrees. To the extent that the Plaintiffs can demonstrate Lorensen's use of the court order to justify the interviews or his alleged lie to justify the need for a family meeting violated their constitutional rights, the Court finds Lorensen personally participated in the alleged events. Moreover, if the Plaintiffs can show Phillips' alleged lie about the requirements of county policy or her determination that they were not entitled to the full grievance process violated their constitutional rights, then the Court finds Phillips personally participated in the alleged events. Defendants' contention that a mere "denial" of a grievance is insufficient to demonstrate personal participation is inapposite here; the case cited by Defendants asks whether a prison official's denial of an administrative grievance demonstrates personal participation, but in this case, the Plaintiffs allege Phillips denied them actual process provided by county policy. *See* Mot. 8 n.6.

11

Because the alleged actions taken by Lorensen and Phillips implicate their "own deliberate intentional acts" rather than their roles as supervisors, the Court will not grant the Defendants' motion for a failure to demonstrate personal participation.

### III. Do the Plaintiffs Lack Standing to Bring Fourth Amendment Claims?

Plaintiffs contend that they bring claims not only on behalf of their children, but on behalf of themselves; thus, the Court must determine whether Plaintiffs state plausible Fourth and Fourteenth Amendment claims. The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Minn. v. Carter*, 525 U.S. 83, 88 (1998). The Amendment protects persons against unreasonable searches of "their persons [and] houses" and thus indicates that the Fourth Amendment is a personal right that must be invoked by an individual. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places")).

While a Fourth Amendment right typically must be invoked by the individual possessing it, the Tenth Circuit noted that there may be circumstances in which a parent has standing to bring a Fourth Amendment claim for the seizure of a minor child, but the parent must "allege [his or] her own distinct injuries" as a result of the seizure. *J.B. v. Wash. Cnty.*, 127 F.3d 919, 928 (10th Cir. 1997). The Ninth Circuit mentioned this note, but determined that a child's removal from parental custody invoked *the child's* Fourth Amendment rights against seizure and, separately, the parents' Fourteenth Amendment rights against interference with the right to familial association. *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000); *see also J.B.*, 127 F.3d at 928 ("it is clear that constitutional protection afforded a parent against a child's seizure [from her home to be

12

interviewed for possible child abuse] may be found in the Fourteenth Amendment").

Supporting their individual claims under the Fourth Amendment, the Plaintiffs allege that, as a result of the DHS Defendant's "seizure" of the children for interviews, they, as parents, were "embarrassed" and the seizure caused them "to question authority." Am. Compl. 5 ("we have been hurt severely by this illegal intrusion emotionally and socially in the community"). However, they request no recovery for any emotional or mental harm, but seek only "punitive damages from the Lincoln County Department of Human Services." *Id.* at 10. Moreover, the Plaintiffs proffer no argument concerning their own injuries resulting from the alleged seizure.

Under these circumstances, I find the Plaintiffs have failed to allege an "injury in fact" necessary to confer standing for their own Fourth Amendment claims against the DHS Defendants. *See J.B.*, 127 F.3d at 928. To satisfy Article III standing requirements, a plaintiff must show that he or she suffered an "injury in fact," that is, an injury that is both "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Even taking them as true, allegations that Gossett's purported "seizure" of the children (during which the children were escorted from their classrooms to a room where Gossett interviewed them or when Gossett interviewed one of them at home) "embarrassed" the Plaintiffs and "caused the children and parents to question authority" are merely bare assertions, do not describe injuries that are either concrete or particular, and fail to meet the requirements of Fed. R. Civ. P. 8.

Without standing to bring their Fourth Amendment claims against the DHS Defendants, the Plaintiffs have failed to demonstrate this Court's jurisdiction over such claims. *See Morris v. Khadr*, 415 F. Supp. 2d 1323, 1329 (D. Utah 2006) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)) ("Because standing is a constitutional component of a federal court's

subject matter jurisdiction, federal courts must ascertain in each case whether the parties have standing to present their claims."). Accordingly, the Court will grant the DHS Defendants' motion to dismiss the Plaintiffs' Fourth Amendment claims against Defendants for the Court's lack of subject-matter jurisdiction.[3]

In light of this order, the Court need not proceed to analyze whether the DHS Defendants' conduct constituted a "seizure" under the Fourth Amendment pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. Do the Allegations Support the Plaintiffs' Fourteenth Amendment Claims?

Construing the Plaintiffs' allegations liberally as I must, the Court finds the Plaintiffs fail to allege substantive due process claims against the DHS Defendants. Plaintiffs' "liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see Meyer v. Nebraska*, 262 U.S. 390, 399–401 (1923) (holding that parents have a fundamental right to "establish a home and bring up children" and "to control the education of their own").

The Tenth Circuit has also "recognized the existence of a right to familial association within the substantive rights protected by the Due Process Clause." *PJ ex rel. Jensen v. Wagner*,

---

[3] "Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).

The Court's analysis in this regard presents a "facial" attack on the complaint's allegations as to the Court's subject matter jurisdiction, which questions the sufficiency of the complaint. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing a facial attack on the complaint, I must accept the allegations in the complaint as true. *Id.*

603 F.3d 1182, 1199 (10th Cir. 2010); *see also Griffin v. Strong*, 983 F.2d 1544, 1546–47 (10th Cir. 1993) (examining the development of the right of familial association protected under the Fourteenth Amendment). But this Court also notes, "[n]ot every statement or act that *results* in an interference with the rights of intimate association is actionable." *Griffin,* 983 F.2d at 1548. "[A]n allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983." *Trujillo v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 768 F.2d 1186, 1190 (10th Cir. 1985). Accordingly, Plaintiffs must allege that the DHS Defendants' conduct was directed at the familial "relationship with knowledge that the statements or conduct w[ould] adversely affect that relationship." *See Griffin,* 983 F.2d at 1548.

Plaintiffs claim their "fundamental liberty interest in the care, custody, and management of their children was carelessly and recklessly violated" when their children were interviewed by DHS without notice or consent. Resp. 22. To support their claims, Plaintiffs assert that Defendant Gossett interviewed three of Plaintiffs' children at the Limon public schools they attended and interviewed WD, Plaintiffs' fourth child, at the Limon Child Development Center. Am. Compl. 4. Several weeks later, after Plaintiffs informed Gossett and DHS that they "did not want WD or any of their children interviewed without their direct consent or a court order," Gossett interviewed WD a second time at Plaintiffs' home. Am. Compl. 4. Gossett obtained access to interview WD at Plaintiffs' home through a babysitter who was watching WD at the time. Am. Compl. 4. Plaintiffs contend that the DHS Defendants' actions constituted an unreasonable intrusion, placed a stigma on the children and family, and damaged their reputation in the community. Am. Compl. 5.

The Court finds these allegations do not implicate the Plaintiffs' Fourteenth Amendment

rights to familial association. It is undisputed that Plaintiffs' "liberty interests in the custody, care, and management of [their] children are of paramount importance." *J.B.*, 127 F.3d at 925. However, Plaintiffs do not allege, and the record does not indicate, that Defendant Gossett or any of the DHS Defendants acted with intent to adversely affect Plaintiffs' familial relations by interviewing Plaintiffs' children in the schools and facilities they attended. Plaintiffs claim the interviews caused the family "embarrassment in the community," but they fail to plausibly allege how the interviews interfered with the Plaintiffs' custody, care, or management of their children. Moreover, even if true that Gossett knew the Plaintiffs did not want their children interviewed without consent or a "current" court order, Plaintiffs do not claim Gossett interviewed WD a second time in Plaintiffs' home with knowledge that the interview would adversely affect the Plaintiffs' familial relationship.

Plaintiffs also contend that any information garnered from the interviews was "stored" for "future use" against them; however, they proffer no allegations nor arguments that Plaintiffs have experienced such action or injury and, thus, these allegations are simply speculative. Therefore, the Court finds Plaintiffs' allegations, taken as true, fail to state Fourteenth Amendment substantive due process claims against the DHS Defendants.

Although Plaintiffs appear to focus primarily on alleged violations of "substantive" due process in their pleading and brief, the Court finds these filings, liberally construed, might also suggest possible claims for violations of "procedural" due process. "[P]rocedural due process does not prevent the state from depriving an individual of liberty or property. It only requires that a fair procedure be provided for the deprivation." *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993). Because procedural due process is a flexible standard, the "exact procedures required by the Constitution depend on the circumstances of a given case." *PJ ex rel. Jensen v. Wagner*,

603 F.3d 1182, 1200 (10th Cir. 2010).

A plaintiff asserting a procedural due process violation must show that he or she "possesses a constitutionally cognizable liberty or property interest" and was deprived of that interest without due process of law. *Jensen*, 603 F.3d at 1199. To satisfy this requirement, a plaintiff "must demonstrate a legitimate claim of entitlement to the asserted interest which may arise either from the Due Process Clause itself or state law." *Id.* However, the "mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause." *Doyle,* 998 F.2d at 1570. A state law that "establishes a substantive predicate without mandating an outcome . . . creates nothing more than a right to process which is not a constitutionally cognizable liberty interest." *See Jensen*, 603 F.3d at 1200. To be a constitutionally cognizable interest, the state law must direct "that 'a particular outcome must follow' if certain predicates are met." *Doyle*, 998 F.2d at 1570 (quoting *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989)). Thus, "the interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope." *Thompson*, 490 U.S. at 460.

Plaintiffs argue that much of the information gathered through the interviews with the children had nothing to do with the referral or the allegation of abuse (Am. Compl. 4), and the DHS Defendants' investigative process bears "no resemblance of a fair procedure" because of the "many inconsistencies in the investigation starting from the credibility of the referral to the collection of invalidated information that is reported as being true." (Resp. 22). According to Plaintiffs, the investigative process was "unreasonable" and the DHS Defendants failed to act in "good faith." (Resp. 20). The Court finds these allegations/arguments are merely conclusory and fail to state a "legitimate claim of entitlement" to a cognizable liberty or property interest. *See Jensen*, 603 F.3d at 1199.

17

Plaintiffs also assert that the DHS Defendants denied Plaintiffs the "proper grievance procedures" to which they were "entitled," saying

> Policy states a citizen review panel will be part of the grievance process. [Defendant Phillips] determined this was not accessible to us eliminating a crucial process to ensure out [sic] rights were protected and the erroneous information and procedures were corrected or removed.

Am. Compl. 7. Further, Phillips "provided no policy or explanation" for such determination. *Id.* The Court finds these allegations, construed liberally and taken as true, also do not plausibly state procedural due process claims against the DHS Defendants. First, Plaintiffs do not allege they were denied the ability to file grievances with the County; in fact, the allegations reflect that both Lorenson, a supervisor, and Phillips, a director, personally met with the Plaintiffs in response to a grievance the Plaintiffs filed concerning the interviews of their children. *Id.*

Second, Plaintiffs' characterization of the "citizen review panel" as a "crucial process" of the grievance process is conclusory; Plaintiffs fail to describe the County's grievance procedure in such a way as to allow the Court to determine whether the procedure "direct[s] that a particular outcome must follow if certain predicates are met." *Doyle*, 998 F.2d at 1570. Although a citizen review panel might arguably constitute a "particular outcome" in the grievance procedure, Plaintiffs identify no "predicates" that must be met and whether they met them. Thus, the Plaintiffs have articulated no entitlement to what has been allegedly deprived them—review by a citizen panel. As the Tenth Circuit affirms, "the mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause." *Doyle,* 998 F.2d at 1570.

Thus, the Court concludes the Plaintiffs' allegations fail to state plausible procedural and substantive due process claims against the DHS Defendants.

18

The Court need not engage in the second-stage analysis of whether the Plaintiffs' Fourth Amendment claims and/or Fourteenth Amendment due process claims were clearly established, since the Plaintiffs did not succeed under the first-stage analysis.

## CONCLUSION

The Court concludes the Plaintiffs may not bring claims on behalf of their children without legal representation, they lack standing to bring individual Fourth Amendment claims, and their allegations against the DHS Defendants do not state substantive or procedural Fourteenth Amendment claims.

Therefore, Defendants Melissa Gossett, Patricia Phillips, and Andy Lorensen's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [filed April 24, 2017; ECF No. 42] is **granted**. The Plaintiffs' claims against the DHS Defendants are dismissed and the Clerk of the Court is directed to remove the DHS Defendants from the caption of this case.

In light of this Order, the stay imposed on April 28, 2017 is lifted. The Court will hold a Status Conference on **October 18, 2017 at 10:00 a.m.** in Courtroom A-501, on the fifth floor of the Alfred A. Arraj United States Courthouse located at 901 19th Street, Denver, Colorado.

Dated at Denver, Colorado, this 26th day of September, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge