IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02704-MEH

JAMES GILLIS, and
CHRISTIE GILLIS, individually and on behalf of their minor children, AG, AW, JG, and WD,

    Plaintiffs,

v.

KIM BRITTON,

    Defendant.

---

**ORDER ON MOTION TO DISMISS**

---

**Michael E. Hegarty, United States Magistrate Judge**.

As set forth in the Plaintiffs' Second Amended Complaint, their Fourth Amendment claims against Defendant Kim Britton ("Britton") are nearly identical to the claims raised against Defendant Cassandra Vernie ("Vernie"), who has been dismissed from this action for the Court's lack of jurisdiction over the Plaintiffs' Fourth Amendment claims and for their failure to state other claims pursuant to Fed. R. Civ. P. 12(b)(6). *Compare* Am. Compl. 8 *with* Am. Compl. 9. Here, after having been identified and served with the operative pleading, Britton has moved to dismiss the Plaintiffs' Fourth Amendment claims against her. First, as the Plaintiffs concede, parents proceeding *pro se* may not bring claims on behalf of their minor children; therefore, as stated in other orders, the Court must grant the motion to dismiss all claims brought on behalf of AG, AW, JG, and WD against Britton. Second, for the Plaintiffs' failure to allege standing to bring their Fourth Amendment claims and failure state Fourteenth Amendment claims against Defendant Britton, I will grant the motion to dismiss the Plaintiffs' individual claims.

**BACKGROUND**

Plaintiffs initiated this lawsuit on November 2, 2016, then filed the operative Second Amended Complaint on April 9, 2017 as a matter of course.[1]

**I.     Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiffs in the Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On April 20, 2016, the Lincoln County Department of Human Services ("DHS") received an anonymous "referral" concerning the Plaintiffs' family. Certain DHS staff ("Red Team") conducted a meeting the following day on April 21, 2016. After the Red Team gathered all information concerning the referral, it assigned a "High Risk" level to the referral, which was partly based on information procured from previous DHS involvement with the Plaintiffs' family. The reason given for the referral and need for the "High Risk" level was that the victim, AW, was restrained and punched by the alleged perpetrator, AW's stepfather, Plaintiff James C. Gillis. Only one victim and only one allegation were noted.

On April 21–22, 2016, Case Worker Melissa Gossett, without parental consent or a current court order, interviewed four of the Plaintiffs' children in schools or centers they were attending. As pertinent here, on April 22, 2016, Britton, a staff member at the Limon Child Development Center, facilitated one of the interviews with the Plaintiffs' child, WD, by escorting WD from the play area at the center to a picnic table in a public setting where Gossett proceeded to interview the

---

[1] Plaintiffs filed duplicate copies of the Second Amended Complaint at ECF Nos. 38, 39.

child. There was no law nor a Limon Child Development Center policy or procedure in place that governed a visit from the DHS.

## II. Procedural History

Based on these factual allegations, Plaintiffs claim Britton violated their Fourth Amendment rights to be free from illegal seizures. Am. Compl., ECF No. 39 at 9. Plaintiffs request "the maximum monetary amount allowed by law . . . in punitive damages," as well as an order requiring that the Limon Child Development Center ("LCDC") "create policy to protect the Constitutional rights of the parents and the children in the school setting." *Id.* at 10.

Britton filed the present motion arguing the Plaintiffs fail to state plausible claims for violations of *their own* constitutional rights under the Fourth Amendment, the allegations taken as true do not demonstrate Britton violated the Fourteenth Amendment, the Plaintiffs may not represent their children in this litigation, and Plaintiffs fail to allege Britton is a state actor as necessary to state a claim under 42 U.S.C. § 1983.

Plaintiffs respond stating they "do[ ] no[t] object to the motion to dismiss this civil action but will enter a response for the record if the court will allow." Resp. 1. Plaintiffs proceed to state no arguments rebutting that they may not represent their children in this action and that they have failed to allege Britton is a state actor. Rather, they assert that, at the time of the interview with WD, no policy was in place to guide LCDC employees to conduct interviews with DHS, but since that time, a policy has been implemented in accordance with Colo. Rev. Stat. § 19-3-308(3). However, the Plaintiffs contend that, in contravention of § 19-3-308(3), WD was *not* "the child who was the subject of a report of abuse or neglect" and, thus, Plaintiffs believe the interview was not in line with prevailing law. Plaintiffs continue to argue that the information obtained from this interview "had

3

nothing to do with the original referral and will be used in future cases, if they should arise." Resp. 3. Plaintiffs conclude that they "set out to gain policy to protect the children and parents with both LCDC and the Limon Public Schools and had no intentions of gaining any monetary compensation."[2] *Id.* at 4.

Britton replies that Plaintiffs' arguments do not implicate the conduct alleged against her and the Plaintiffs do not rebut the "representation" or "state actor" arguments made in the motion.

## **LEGAL STANDARDS**

### I.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

---

[2]Plaintiffs also contend that "[h]iring of a lawyer [in this case] would require plaintiffs to seek monetary damages to pay for such services and do not want this outcome." Resp. 4. However, in the operative pleading, Plaintiffs seek as their first, second, and third requests for relief, "the maximum monetary amount allowed by law" for the various alleged constitutional violations. Am. Compl. 10.

4

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

The adequacy of pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## II. Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory

5

on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## **ANALYSIS**

Here, Britton challenges whether the Plaintiffs can or "should be able to" represent their children in this litigation; whether the allegations demonstrate the Plaintiffs, individually, have been injured; and whether the allegations plausibly demonstrate Britton was a state actor. The Court will address each of these challenges in turn.

**I.      May the Plaintiffs Represent Their Children in this Action?**

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Ill.* 439 U.S. 128, 133–34 (1978). "Undoubtedly, parents may assert their children's Fourth Amendment rights *on behalf of* their children." *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997) (emphasis in original). To do so, the children must be named as plaintiffs. *Id.* (parent failed to demonstrate violation of children's Fourth Amendment rights because they were not named in the complaint). Here, the Plaintiffs properly name their children as Plaintiffs in this action.

However, a pro se parent cannot represent his or her children in federal court for constitutional claims. *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986). "In this circuit, we have held 'that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.'" *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1300 (10th Cir. 2011) (quoting *Meeker*, 782 F.2d at 154).[3] The purpose of this rule is to "protect the interests of the minor party; in addition, it jealously guards the judiciary's authority to govern those who practice in courtrooms." *Id.* (quoting *Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2010)). Plaintiffs here are proceeding *pro se* and, thus, cannot bring claims on behalf of their children. They do not offer any argument rebutting this finding.

Accordingly, the Court will grant Britton's motion to dismiss the children's Fourth Amendment claims against her.

## II. Do the Allegations Support Plaintiffs' Individual Fourth Amendment Claims?

Plaintiffs contend they bring claims not only on behalf of their children, but on behalf of themselves. "The Fourth Amendment guarantees: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Minn. v. Carter*, 525 U.S. 83, 88 (1998). The Amendment protects persons against unreasonable searches of "their persons [and] houses" and thus indicates that the Fourth Amendment is a personal right that

---

[3]In *Adams*, the court found that a non-attorney parent could proceed *pro se* in federal court on behalf of her minor child to challenge the denial of social security benefits, because "the reasons for the general rule do not apply to [ ] appeals [from administrative denials]." 659 F.3d at 1300. *Adams*' exception to the general rule does not apply to this case.

7

must be invoked by an individual. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places")).

While a Fourth Amendment right typically must be invoked by the individual possessing it, the Tenth Circuit noted that there may be circumstances in which a parent has standing to bring a Fourth Amendment claim for the seizure of a minor child, but the parent must "allege [his or] her own distinct injuries" as a result of the seizure. *J.B. v. Wash. Cnty.*, 127 F.3d 919, 928 (10th Cir. 1997). The Ninth Circuit mentioned this note, but determined that a child's removal from parental custody invoked his or her Fourth Amendment rights against seizure and, separately, the parents' Fourteenth Amendment rights against interference with the right to familial association. *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000); *see also J.B.*, 127 F.3d at 928 ("it is clear that constitutional protection afforded a parent against a child's seizure [from her home to be interviewed for possible child abuse] may be found in the Fourteenth Amendment").

Although the Plaintiffs raise both Fourth and Fourteenth Amendment claims against other Defendants in this case, they specifically assert their claims against Britton under the Fourth Amendment. Am. Compl. 9. However, in light of the Plaintiffs' *pro se* status in this case, the Court will construe their claims in accordance with the factual allegations and their corresponding arguments. *Hall*, 935 F.2d at 1110.

Plaintiffs allege that Britton "was asked on April 22, 2016 to seize/escort/supervise [or allow] our child, WD, . . . to leave the play area and go over into a public setting at a picnic table where DHS Case Worker Melissa Gossett was present." Am. Compl. 9. Plaintiffs argue that their individual rights were violated when "[o]nce the interview took place, information was obtained that negatively impacted the Plaintiffs. This information had nothing to do with the original referral and

8

will be used in future cases, if they should arise, and are absolutely untrue; yet, plaintiffs cannot refute such information; therefore, infringing upon Plaintiffs Fourth Amendment Rights violating our personal rights to feel secure." Resp. 3.

The Court finds the Plaintiffs' allegations, construed liberally and taken as true, do not implicate the Plaintiffs' Fourteenth Amendment rights against interference with familial association. Unlike those cases involving alleged violations of Fourteenth Amendment rights, Britton was not alleged to have separated the Plaintiffs' child from his/her parents or removed WD from his/her home. *See J.B.*, 127 F.3d at 927 ("plaintiffs have a substantial interest in the right to associate with their family."); *Wallis*, 202 F.3d at 1136 ("Parents and children have a well-elaborated constitutional right to live together without governmental interference."). Therefore, the Court will not infer any claims by the Plaintiffs brought against Britton under the Fourteenth Amendment.

Supporting their individual claims under the Fourth Amendment, the Plaintiffs allege that, as a result of Britton's "seizure" of WD for an interview with Gossett, they, as parents, were "stigmatized" and the seizure caused them "to question authority." Am. Compl. 9. However, the Plaintiffs request no recovery for any emotional or mental harms, but seek only "punitive damages from the Limon Child Development Center." *Id.* at 10. Moreover, the Plaintiffs' argument that information garnered from the interview would be "used in future cases" does not implicate Britton or her conduct in any way and is simply speculative as to any harm.

Under these circumstances, I find the Plaintiffs have failed to allege an "injury in fact" necessary to confer standing for their Fourth Amendment claims against Britton. *See J.B.*, 127 F.3d at 928. "To satisfy Article III standing requirements, a plaintiff must show that he or she suffered an 'injury in fact,' that is, an injury that is both concrete and particularized and actual or imminent."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Even taking them as true, the Plaintiffs' allegations that Britton's purported seizure of WD—that is, to escort WD from the play area to a picnic table where Defendant Gossett awaited an interview with WD—placed a "stigmatism"[4] on the family and "caused the children and parents to question authority" are merely bare assertions, do not describe injuries that are either concrete or particular, and fail to meet the requirements of Fed. R. Civ. P. 8.[5]

Without standing to bring their Fourth Amendment claims against Britton, the Plaintiffs have failed to demonstrate this Court's jurisdiction over such claims. *See Rector v. City & Cnty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) ("Standing . . . raises jurisdictional questions and we are required to consider 'the issue *sua sponte* to ensure that there is an Article III case or controversy' before us.") (citation omitted); *see also Morris v. Khadr*, 415 F. Supp. 2d 1323, 1329 (D. Utah 2006) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)) ("Because standing is a constitutional component of a federal court's subject matter jurisdiction, federal courts must ascertain in each case whether the parties have standing to present their claims."). Accordingly, the Court will grant Britton's motion to dismiss the Plaintiffs' Fourth Amendment claims against her for the Court's lack of subject-matter jurisdiction.[6]

---

[4]The Court assumes the Plaintiffs intended to use the term, "stigma," which is defined as "a mark of shame or discredit." https://www.merriam-webster.com/dictionary/stigma (last visited November 6, 2017).

[5]Notably, on June 5, 2017, the Court issued an order dismissing Defendant Vernie for essentially the same reason. ECF No. 53. However, the Plaintiffs have not sought to amend their Second Amended Complaint to clarify or explain their alleged injuries in this case.

[6]"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the

In light of this order, the Court will not proceed to analyze whether Britton was a state actor or whether her conduct constituted a "seizure" under the Fourth Amendment pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

The Court concludes the Plaintiffs may not bring claims on behalf of their children without legal representation, their allegations against Britton do not state Fourteenth Amendment claims, and they lack standing to bring individual Fourth Amendment claims against Britton. Therefore, Defendant Kim Britton's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [filed October 11, 2017; ECF No. 66] is **granted**. The Clerk of the Court is directed to close this case.

Dated at Denver, Colorado, this 14th day of November, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

litigation.'" *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).

The Court's analysis in this regard presents a "facial" attack on the complaint's allegations as to the Court's subject matter jurisdiction, which questions the sufficiency of the complaint. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing a facial attack on the complaint, I must accept the allegations in the complaint as true. *Id.*